IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Senior Judge Wiley Y. Daniel**

Civil Action No.  12-cv-01693-WYD

WILLIAM ARELLANO,

      Applicant,

v.

ANGEL MEDINA, Warden, and
THE ATTORNEY GENERAL OF THE STATE OF COLORADO,

      Respondents.

---

## ORDER ON APPLICATION FOR WRIT OF HABEAS CORPUS

---

This matter is before me on the Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (ECF No. 1) (the "Application") filed *pro se* by Applicant, William Arellano.  Respondents have filed an Answer (ECF No. 22) ("the Answer"), and Mr. Arellano has filed a Traverse to Respondents' Answer to Habeas Application (ECF No. 24) ("the Traverse").  After reviewing the record, including the Application, the Answer, the Traverse, and the state court record, the Court concludes that the Application should be denied and the case dismissed with prejudice.

## I.  BACKGROUND

Mr. Arellano is a prisoner in the custody of the Colorado Department of Corrections at the Limon Correctional Facility in Limon, Colorado.  Mr. Arellano is challenging the validity of his conviction and sentence in Pueblo County District Court case number 03CR383.

Mr. Arellano was convicted by a jury of theft from an at-risk adult, two counts of attempted theft from an at-risk adult, and three counts of second degree burglary of a dwelling.  Mr. Arellano's convictions stemmed from a series of incidents in which he entered or remained in the homes of elderly women without permission and, while the victims were distracted, took or attempted to take jewelry or other items of value from their bedrooms.

Mr. Arellano also was adjudicated to be an habitual criminal and he was sentenced to a total term of 144 years in prison.  The Colorado Court of Appeals affirmed the judgment of conviction on direct appeal.  *See People v. Arellano*, No. 04CA1307 (Colo. App. Sept. 7, 2006) (unpublished) (ECF No. 14-1) (*Arellano I*).  On May 14, 2007, the Colorado Supreme Court denied Mr. Arellano's petition for writ of certiorari on direct appeal.  (*See* ECF No. 14-3.)

On July 10, 2007, Mr. Arellano filed a postconviction motion pursuant to Rule 35(c) of the Colorado Rules of Criminal Procedure.  (*See* ECF No. 14-2 at 11.)  The trial court denied the Rule 35(c) motion on March 4, 2010.  (*See id.* at 9.)  The Colorado Court of Appeals subsequently affirmed the trial court's order denying the Rule 35(c) motion.  *See People v. Arellano*, No. 10CA0754 (Colo. App. Oct. 6, 2011) (unpublished) (ECF No. 14-11) (*Arellano II*).  On February 6, 2012, the Colorado Supreme Court denied Mr. Arellano's petition for writ of certiorari in the state court postconviction proceedings.  (*See* ECF No. 14-4.)

Mr. Arellano asserts five numbered claims for relief in the Application, two of which have subparts.  I previously entered an Order to Dismiss in Part (ECF No. 21) in

which I dismissed claims 2, 4(a) - 4(d), and 5 as unexhausted and procedurally barred.

As a result, only claims 1, 3(a), 3(b), 4(e), and 4(f) remain pending before me.

Mr. Arellano alleges in his remaining claims that:

1.  His Sixth Amendment right to a fair trial before an impartial jury was violated because the trial court denied a challenge for cause to a biased seventy-nine-year-old juror.

3.  His Sixth and Fourteenth Amendment rights were violated because (a) there was insufficient evidence to support his adjudication as an habitual criminal and (b) the trial court's allowance of documentary evidence under the business records exception in the habitual criminal proceedings denied him the opportunity to confront the witnesses against him.

4.  His Sixth and Fourteenth Amendment right to the effective assistance of counsel was violated because: (e) trial counsel failed to seek replacement of an allegedly biased juror who overheard a comment that Mr. Arellano previously had served time[1]; and (f) counsel on direct appeal failed to raise as an issue the trial court's failure to sua sponte declare a mistrial when a prospective juror exposed other jurors to the fact that Mr. Arellano previously had served time.

Respondents do not argue that the remaining claims are untimely and I have

determined they are exhausted.

## II. <u>STANDARD OF REVIEW</u>

I must construe the Application and the Traverse liberally because Mr. Arellano is

not represented by an attorney. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)

---

[1]In the Application, Mr. Arellano's fifth argument that trial counsel was ineffective, designated in this order as claim 4(e), consists of an allegation that trial counsel failed to seek replacement of a juror, Mr. Arellano's ex-brother-in-law, who did not actually serve on the jury but allegedly exposed members of the jury pool to the fact that Mr. Arellano had been incarcerated since he was a juvenile. Respondents have construed Mr. Arellano's fifth argument in the manner set forth in claim 4(e) in this order and Mr. Arellano has not objected to that construction of claim 4(e). Therefore, I will consider claim 4(e) as construed by Respondents.

(per curiam); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  However, I should

not be an advocate for a *pro se* litigant.  *See Hall*, 935 F.2d at 1110.

Title 28 U.S.C. § 2254(d) provides that a writ of habeas corpus may not be

issued with respect to any claim that was adjudicated on the merits in state court unless

the state court adjudication:

> (1)  resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law,
> as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an
> unreasonable determination of the facts in light of the
> evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  Mr. Arellano bears the burden of proof under § 2254(d).  *See*

*Woodford v. Visciotti*, 537 U.S. 19, 25 (2002) (per curiam).

A claim may be adjudicated on the merits in state court even in the absence of a

statement of reasons by the state court for rejecting the claim.  *Harrington v. Richter*,

131 S. Ct. 770, 784-85 (2011).  In particular, "determining whether a state court's

decision resulted from an unreasonable legal or factual conclusion does not require that

there be an opinion from the state court explaining the state court's reasoning."  *Id*. at

784.  Thus, "[w]hen a federal claim has been presented to a state court and the state

court has denied relief, it may be presumed that the state court adjudicated the claim on

the merits in the absence of any indication or state-law procedural principles to the

contrary."  *Id*. at 784-85.  Even "[w]here a state court's decision is unaccompanied by an

explanation, the habeas petitioner's burden still must be met by showing there was no

reasonable basis for the state court to deny relief."  *Id*. at 784.  In other words, I "owe

4

deference to the state court's *result*, even if its reasoning is not expressly stated."

*Aycox v. Lytle*, 196 F.3d 1174, 1177 (10th Cir. 1999).  Therefore, I "must uphold the

state court's summary decision unless [my] independent review of the record and

pertinent federal law persuades [me] that its result contravenes or unreasonably applies

clearly established federal law, or is based on an unreasonable determination of the

facts in light of the evidence presented."  *Id*. at 1178.  "This 'independent review' should

be distinguished from a full de novo review of the petitioner's claims."  *Id*.

I review claims of legal error and mixed questions of law and fact pursuant to 28

U.S.C. § 2254(d)(1).  *See Cook v. McKune*, 323 F.3d 825, 830 (10th Cir. 2003).  The

threshold question I must answer under § 2254(d)(1) is whether Mr. Arellano seeks to

apply a rule of law that was clearly established by the Supreme Court at the time his

conviction became final.  *See Williams v. Taylor*, 529 U.S. 362, 390 (2000).  Clearly

established federal law "refers to the holdings, as opposed to the dicta, of [the Supreme]

Court's decisions as of the time of the relevant state-court decision."  *Id*. at 412.

Furthermore,

> clearly established law consists of Supreme Court holdings
> in cases where the facts are at least closely-related or
> similar to the case *sub judice*.  Although the legal rule at
> issue need not have had its genesis in the closely-related or
> similar factual context, the Supreme Court must have
> expressly extended the legal rule to that context.

*House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008).  If there is no clearly established

federal law, that is the end of my inquiry pursuant to § 2254(d)(1).  *See id*. at 1018.

If a clearly established rule of federal law is implicated, I must determine whether the state court's decision was contrary to or an unreasonable application of that clearly established rule of federal law.  *See Williams*, 529 U.S. at 404-05.

> A state-court decision is contrary to clearly established federal law if: (a) "the state court applies a rule that contradicts the governing law set forth in Supreme Court cases"; or (b) "the state court confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from [that] precedent." *Maynard* [*v. Boone*], 468 F.3d [665,] 669 [(10th Cir. 2006)] (internal quotation marks and brackets omitted) (quoting *Williams*, 529 U.S. at 405).  "The word 'contrary' is commonly understood to mean 'diametrically different,' 'opposite in character or nature,' or 'mutually opposed.'" *Williams*, 529 U.S. at 405 (citation omitted).
>
> A state court decision involves an unreasonable application of clearly established federal law when it identifies the correct governing legal rule from Supreme Court cases, but unreasonably applies it to the facts.  *Id.* at 407-08.  Additionally, we have recognized that an unreasonable application may occur if the state court either unreasonably extends, or unreasonably refuses to extend, a legal principle from Supreme Court precedent to a new context where it should apply.

*House*, 527 F.3d at 1018.

My inquiry pursuant to the "unreasonable application" clause is an objective inquiry.  *See Williams*, 529 U.S. at 409-10.  "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather that application must also be unreasonable."  *Id.* at 411.  "[A] decision is 'objectively unreasonable' when most reasonable jurists exercising their independent

judgment would conclude the state court misapplied Supreme Court law." *Maynard*,

468 F.3d at 671.  Furthermore,

> [E]valuating whether a rule application was unreasonable
> requires considering the rule's specificity.  The more general
> the rule, the more leeway courts have in reaching outcomes
> in case-by-case determinations.  [I]t is not an unreasonable
> application of clearly established Federal law for a state
> court to decline to apply a specific legal rule that has not
> been squarely established by [the Supreme] Court.

*Harrington*, 131 S. Ct. at 786 (internal citation and quotation marks omitted).  In

conducting this analysis, I "must determine what arguments or theories supported or . . .

could have supported[] the state court's decision" and then "ask whether it is possible

fairminded jurists could disagree that those arguments or theories are inconsistent with

the holding in a prior decision of [the Supreme] Court." *Id*.  In addition, "review under

§ 2254(d)(1) is limited to the record that was before the state court that adjudicated the

claim on the merits." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011).

Under this standard, "only the most serious misapplications of Supreme Court

precedent will be a basis for relief under § 2254." *Maynard*, 468 F.3d at 671; *see also*

*Harrington*, 131 S. Ct. at 786 (stating that "even a strong case for relief does not mean

the state court's contrary conclusion was unreasonable").

> As a condition for obtaining habeas corpus from a federal
> court, a state prisoner must show that the state court's ruling
> on the claim being presented in federal court was so lacking
> in justification that there was an error well understood and
> comprehended in existing law beyond any possibility for
> fairminded disagreement.

*Harrington*, 131 S. Ct. 786-87.

I review claims asserting factual errors pursuant to 28 U.S.C. § 2254(d)(2).  *See Romano v. Gibson*, 278 F.3d 1145, 1154 n.4 (10th Cir. 2002).  Section 2254(d)(2) allows me to grant a writ of habeas corpus only if the relevant state court decision was based on an unreasonable determination of the facts in light of the evidence presented to the state court.  Pursuant to § 2254(e)(1), I must presume that the state court's factual determinations are correct and Mr. Arellano bears the burden of rebutting the presumption by clear and convincing evidence.  "The standard is demanding but not insatiable . . . [because] '[d]eference does not by definition preclude relief.'"  *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)).

If a claim was not adjudicated on the merits in state court, and if the claim also is not procedurally barred, I must review the claim *de novo* and the deferential standards of § 2254(d) do not apply.  *See Gipson v. Jordan*, 376 F.3d 1193, 1196 (10th Cir. 2004).

## III. MERITS OF APPLICANT'S REMAINING CLAIMS

### A. Claim 1

As set forth above, Mr. Arellano contends in claim 1 that his Sixth Amendment right to a fair trial before an impartial jury was violated because the trial court denied a challenge for cause to a biased seventy-nine-year-old juror.  The seventy-nine-year-old juror in question was Juror Phelps.  (*See* State Court R., Trial Tr. 1/6/04 at pp.20-24 & 36-39[2]; *see also* ECF No. 14-5 at 13-16.)  Mr. Arellano alleges in support of claim 1 that

---

[2]The state court record includes two transcripts that encompass the trial court proceedings on January 6, 2004, including one bound volume labeled volume 2 and another transcript identified as 03CR383 ARELLANO 01-06-04 on a compact disk labeled disk 2.  The transcript that includes the relevant portions of voir dire pertinent to Juror Phelps is on disk 2.

Juror Phelps stated during voir dire he could not be fair because he had been the victim of a burglary in the past and he would be sympathetic to the elderly victims in Mr. Arellano's case.  Mr. Arellano also alleges in the Application that he "was unable to remove the juror he had challenged for cause."  (ECF No. 1 at 5.)  However, the record is clear that, after the trial court denied Mr. Arellano's challenge for cause of Juror Phelps, Mr. Arellano "used a peremptory challenge to remove him."  (ECF No. 14-1 at 3-4; *see also* State Court R., Trial Tr. 1/6/04 at p.56.)  Respondents argue that claim 1 lacks merit and must be dismissed because Juror Phelps did not serve on the jury that ultimately returned a guilty verdict.

The Sixth and Fourteenth Amendments to the United States Constitution guarantee a defendant the right to an impartial jury.  *See Ross v. Oklahoma*, 487 U.S. 81, 85 (1988); *Irvin v. Dowd*, 366 U.S. 717, 722 (1961).  If a "juror's views would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath," he should be dismissed for cause.  *Wainwright v. Witt*, 469 U.S. 412, 424 (1985) (internal quotation marks omitted); *see also United States v. Scull*, 321 F.3d 1270, 1278 (10th Cir. 2003).  However, in deciding whether the jury was impartial, I must focus on the jurors who ultimately deliberated and decided Mr. Arellano's fate.  *See Ross*, 487 U.S. at 86.

I find that Mr. Arellano is not entitled to relief with respect to claim 1 because, as noted above, the record is clear that he used a peremptory challenge to excuse Juror Phelps after the trial court denied the defense challenge for cause.  Thus, Mr. Arellano cured any constitutional error that may have occurred when the trial court refused to

remove Juror Phelps for cause.  *See Ross*, 487 U.S. at 88.  The fact that Mr. Arellano

was required to use a peremptory challenge to achieve the goal of an impartial jury is

not sufficient to demonstrate a constitutional violation.  *See id.*

   B.  **Claim 3**

   Mr. Arellano alleges in claim 3 that his Sixth and Fourteenth Amendment rights

were violated because (a) there was insufficient evidence to support his adjudication as

an habitual criminal and (b) the trial court's allowance of documentary evidence under

the business records exception in the habitual criminal proceedings denied him the

opportunity to confront the witnesses against him.  The factual background for both

claims 3(a) and 3(b) was described by the Colorado Court of Appeals on direct appeal

as follows:

> Defendant was charged as an habitual criminal under
> the following provision:
>
>> Every person convicted in this state of
>> any felony, who has been three times
>> previously convicted, upon charges separately
>> brought and tried, and arising out of separate
>> and distinct criminal episodes, either in this
>> state or elsewhere, of a felony . . . shall be
>> adjudged an habitual criminal and shall be
>> punished for the felony offense of which such
>> person is convicted by imprisonment in the
>> department of corrections for a term of four
>> times the maximum of the presumptive range
>> pursuant to section 18-1.3-401 for the class of
>> felony of which such person is convicted.  Such
>> former conviction or convictions and judgment
>> or judgments shall be set forth in apt words in
>> the indictment or information.
>
> Section 18-1.3-801(2), C.R.S. 2005.

The information alleged defendant had previously been convicted of three felonies, including two separate convictions for second degree burglary of a dwelling and one for attempted escape.

To prove these allegations, the prosecution called a parole officer, who identified defendant as the person he had supervised.  The parole officer also identified a set of records that had been certified by the custodian of offender records for the Department of Corrections (DOC) (the pen pack).  In addition to the certification of the custodian, the pen pack contained the certification of a district court judge verifying the custodian's authority and signature, as well as a certification by the clerk of court, under seal, verifying the district judge's authority and signature.

The pen pack contained two photographs of defendant (taken in 1993 and 2001) bearing his DOC inmate number, as well as copies of mittimuses for all three of the charged prior convictions.  The parole officer further testified that the DOC inmate number and case numbers in the pen pack corresponded with the information contained in his own file relating to defendant.

Over defendant's objection, the trial court admitted the pen pack as a self-authenticating document pursuant to CRE 902 (although the trial court did not state on what basis it was overruling defendant's hearsay objection, it appears the court agreed with the prosecution's position that the pen pack was admissible as public record pursuant to CRE 803(8)).  Based on this evidence, the trial court found the People had proved the habitual criminal counts beyond a reasonable doubt.

*Arellano I*, slip op. at 11-13 (ECF No. 14-1 at 12-14).

Mr. Arellano specifically asserts in claim 3(a) that there was insufficient evidence

to support his adjudication as an habitual criminal.  The parties agree that, under

Colorado law, "[t]he prosecuting attorney has the burden of proving beyond a

reasonable doubt that the defendant has been previously convicted as alleged." *See* Colo. Rev. Stat. § 18-1.3-803(4)(b).

The standard for sufficiency of the evidence, which was clearly established when Mr. Arellano was adjudicated to be an habitual criminal, is set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). In *Jackson*, the Supreme Court held that "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319. "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id.* "Sufficiency of the evidence is a mixed question of law and fact." *Maynard*, 468 F.3d at 673. Therefore, I must apply both § 2254(d)(1) and (d)(2) and "ask whether the facts are correct and whether the law was properly applied to the facts." *Id.*

The Colorado Court of Appeals applied this clearly-established federal law and rejected Mr. Arellano's claim challenging the sufficiency of the evidence. The state court specifically determined that "the mittimuses and photographs contained in the pen pack, together with the testimony of the parole officer, were sufficient to prove beyond a reasonable doubt that defendant was the person who had sustained the three prior convictions alleged in the information." *Arellano I* at 19 (ECF No. 14-1 at 20).

Mr. Arellano argues in the Traverse that there was insufficient evidence to support his adjudication as an habitual criminal because the pen packs should not have

been admitted as evidence against him for the reasons set forth in claim 3(b). According to Mr. Arellano,

> if we are faced with Mr. Arellano's confrontation rights being violated, and all the evidence being suppressed, i.e., all the pen packs, as well as the testimony of the probation officer (but for his testimony of the offense he allegedly supervised Mr. Arellano on), there was no evidence to convict Mr. Arellano of being an habitual criminal.

(ECF No. 24 at 8.) Therefore, because claim 3(a) is contingent on the success of claim 3(b), I will proceed to address the merits of claim 3(b).

Mr. Arellano contends in claim 3(b) that the trial court's allowance of documentary evidence under the business records exception in the habitual criminal proceedings denied him the opportunity to confront the witnesses against him. The right of an accused to confront the witnesses against him is guaranteed by the Sixth Amendment to the United States Constitution and applies in both federal and state prosecutions. *See Stevens v. Ortiz*, 465 F.3d 1229, 1235 (10th Cir. 2006). "The central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact." *Maryland v. Craig*, 497 U.S. 836, 845 (1990).

In *Crawford v. Washington*, 541 U.S. 36, 68-69 (2004), the United States Supreme Court held that the Confrontation Clause bars the introduction into evidence of out-of-court statements that are testimonial in nature unless the witness is unavailable and the defendant had a prior opportunity to cross-examine the witness, regardless of whether the statements are deemed reliable. However, the Confrontation Clause has

no application to out-of-court nontestimonial statements.  *See Whorton v. Bockting*, 549

U.S. 406, 420 (2007).

The Colorado Court of Appeals determined that Mr. Arellano's confrontation

rights were not violated because "a DOC pen pack is an official record of a type not

subject to the requirements of *Crawford* and the affidavits certifying the authenticity of

such documents do not contain testimonial statements within the meaning of *Crawford*."

(ECF No. 14-1 at 15.)  This determination is not an unreasonable application of

*Crawford* because public records not prepared as part of a criminal prosecution, such

as the records at issue in this action, are not testimonial.  To be testimonial, a statement

must have a "primary purpose" of "establish[ing] or prov[ing] past events potentially

relevant to later criminal prosecution."  *Davis v. Washington*, 547 U.S. 813, 822 (2006).

Under this definition of testimonial, it is clear that admission into evidence of the public

records at issue in the instant action does not implicate the Confrontation Clause.  *See*

*United States v. Weiland*, 420 F.3d 1062, 1076-77 (9th Cir. 2005) (criminal judgment

admissible to show defendant's prior convictions); *see also United States v. Watson*,

650 F.3d 1084, 1090 n.3 (8th Cir. 2011) (penitentiary records containing booking

photographs and fingerprint cards that are admissible as self-authenticating public

records do not implicate the Confrontation Clause).

Mr. Arellano's reliance on *Bullcoming v. New Mexico*, 131 S. Ct. 2705 (2011),

and *Melendez-Diaz v. Massachusetts*, 557 U.S. 305 (2009), is misplaced because

those cases, which were decided after Mr. Arellano's conviction became final in 2007,

were not clearly established law at the relevant time.  In any event, the Supreme Court

in *Melendez-Diaz* recognized that "[b]usiness and public records are generally admissible absent confrontation . . . because – having been created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial – they are not testimonial." *Melendez-Diaz*, 557 U.S. at 324.

Because the state court's decision rejecting Mr. Arellano's Confrontation Clause claim is neither contrary to nor an unreasonable application of clearly established Supreme Court law, I find that Mr. Arellano is not entitled to relief with respect to claim 3(b).  Furthermore, because Mr. Arellano's insufficient evidence argument in claim 3(a) is contingent on a Confrontation Clause violation in claim 3(b), Mr. Arellano also is not entitled to relief with respect to claim 3(a).

**C.** **Claim 4**

Mr. Arellano alleges in claim 4 that his Sixth and Fourteenth Amendment right to the effective assistance of counsel was violated because: (e) trial counsel failed to seek replacement of an allegedly biased juror who overheard a comment that Mr. Arellano previously had served time and (f) counsel on direct appeal failed to raise as an issue the trial court's failure to sua sponte declare a mistrial when a prospective juror exposed other jurors to the fact that Mr. Arellano previously had served time.  The Colorado Court of Appeals described the factual background for Mr. Arellano's ineffective assistance of counsel claims as follows:

> On the first day of defendant's trial and after the jury had been empaneled, juror number 12 (Juror 12) informed the court that another prospective juror, who was defendant's ex-brother-in-law, stated to him that defendant "had been in jail" since he was fifteen or sixteen.

The trial court questioned Juror 12 in camera about this extraneous statement and asked him if he could exclude the statement from his consideration in the case. Juror 12 repeatedly stated that he could. The court confirmed that Juror 12 had not mentioned the statement to any of the other jurors. The court then stated:

> I'm pretty convinced [Juror 12], based on his statements, is not going to use [the extraneous statement] for any purpose whatsoever. He said that multiple times. I have no reason to doubt his sincerity.

> Defendant made a motion for a mistrial based on Juror 12's exposure to the extraneous statement. This motion was denied.

*Arellano II*, slip op. at 1-2 (ECF No. 14-11 at 3-4).

It was clearly established when Mr. Arellano was convicted that a defendant has a Sixth Amendment right to the effective assistance of counsel. *See Strickland v. Washington*, 466 U.S. 668 (1984). Ineffective assistance of counsel claims are mixed questions of law and fact. *See id.* at 698.

To establish that counsel was ineffective, Mr. Arellano must demonstrate both that counsel's performance fell below an objective standard of reasonableness and that counsel's deficient performance resulted in prejudice to his defense. *See id.* at 687. "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. There is "a strong presumption" that counsel's performance falls within the range of "reasonable professional assistance." *Id.* It is Mr. Arellano's burden to overcome this presumption by showing that the alleged errors were not sound strategy under the circumstances. *See id.* "For counsel's performance to be constitutionally ineffective, it must have been completely unreasonable, not merely wrong." *Boyd v. Ward*, 179 F.3d

16

904, 914 (10th Cir. 1999).  Furthermore, "because the *Strickland* standard is a general

standard, a state court has even more latitude to reasonably determine that a defendant

has not satisfied that standard." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009).

In the context of a claim that counsel on direct appeal was ineffective, "it is

difficult to show deficient performance . . . because counsel 'need not (and should not)

raise every nonfrivolous claim, but rather may select from among them in order to

maximize the likelihood of success on appeal.'" *Cargle v. Mullin*, 317 F.3d 1196, 1202

(10th Cir. 2003) (quoting *Smith v. Robbins*, 528 U.S. 259, 288 (2000)).  Thus, in

considering a claim that appellate counsel was ineffective by failing to raise an issue on

appeal, I must look to the merits of the omitted issue.  *See Neill v. Gibson*, 278 F.3d

1044, 1057 (10th Cir. 2001).

> If the omitted issue is so plainly meritorious that it would
> have been unreasonable to winnow it out even from an
> otherwise strong appeal, its omission may directly establish
> deficient performance; if the omitted issue has merit but is
> not so compelling, the case for deficient performance is
> more complicated, requiring an assessment of the issue
> relative to the rest of the appeal, and deferential
> consideration must be given to any professional judgment
> involved in its omission; of course, if the issue is meritless,
> its omission will not constitute deficient performance.

*Cargle*, 317 F.3d at 1202.

Under the prejudice prong, Mr. Arellano must establish "a reasonable probability

that, but for counsel's unprofessional errors, the result of the proceeding would have

been different." *Strickland*, 466 U.S. at 694.  "A reasonable probability is a probability

sufficient to undermine confidence in the outcome." *Id.*; *see also Harrington*, 131 S. Ct.

at 792 (stating that "[t]he likelihood of a different result must be substantial, not just

17

conceivable."). In determining whether Mr. Arellano has established prejudice, the

Court must look at the totality of the evidence and not just the evidence that is helpful to

Mr. Arellano. *See Boyd*, 179 F.3d at 914.

Finally, conclusory allegations that counsel was ineffective are not sufficient to

warrant habeas relief. *See Humphreys v. Gibson*, 261 F.3d 1016, 1022 n.2 (10th Cir.

2001). If Mr. Arellano fails to satisfy either prong of the *Strickland* test, the ineffective

assistance of counsel claims must be dismissed. *See Strickland*, 466 U.S. at 697.

The Colorado Court of Appeals applied this clearly-established federal law in

rejecting Mr. Arellano's ineffective assistance of counsel claims. With respect to claim

4(e), in which Mr. Arellano alleges that trial counsel failed to seek replacement of an

allegedly biased juror who overheard a comment that Mr. Arellano previously had

served time, the Colorado Court of Appeals reasoned that

> Defendant presented no competent evidence showing
> that trial counsel's performance fell outside "the wide range
> of reasonable professional assistance." *See Strickland*, 466
> U.S. at 689. Although defendant now asserts that trial
> counsel should have requested the alternate juror, there is
> no evidence in the record suggesting trial counsel's decision
> not to request the alternate juror was an incompetent
> decision.

*Arellano II*, slip op. at 7 (ECF No. 14-11 at 9). Similarly, with respect to respect to claim

4(f) in which Mr. Arellano claims direct appeal counsel was ineffective, the Colorado

Court of Appeals agreed with the trial court's determination "that defendant presented

no evidence showing that appellate counsel's performance was an incompetent

decision." *Arellano II*, slip op. at 8 (ECF No. 14-11 at 10). In particular, the Colorado

Court of Appeals noted that, "[a]lthough defendant disagrees with appellate counsel's

decision not to appeal the denial of his motion for a mistrial, he has presented no

evidence as to whether this issue was clearly stronger than those presented." *Id.*

(internal quotation marks omitted).

Mr. Arellano contends that the rejection of claim 4(e) was an unreasonable

application of *Strickland* because Colorado state law authorizes the replacement of a

juror and counsel failed to pursue that remedy.  He explains as follows:

> Clearly counsel's performance was constitutionally deficient
> as it is self-evident that counsel was unaware of
> Mr. Arellano's right to seek replacement of the juror and
> instead only sought a mistrial, which is a drastic remedy
> (perhaps counsel should have asked for a recess and
> sought permission to conduct individual voir dire of the jurors
> to determine whether they had all been exposed to the fact
> that Mr. Arellano had numerous prior convictions, i.e.,
> evidence which had not been introduced at trial prior to
> seeking a mistrial.  In other words, had the entire jury pool
> been exposed, a mistrial would be a proper remedy as the
> jurors were required to make a finding based sole[l]y on the
> evidence introduced at trial and not that disclosed by some
> former person acquainted with Mr. Arellano and his past.)
> Anyway you look at it, counsel failed to discharge a valid
> legal obligation, i.e., discuss and exercise on behalf of his
> client that which is allowed under state law.

(ECF No. 24 at 10-11.)

With respect to claim 4(f), Mr. Arellano argues in the Traverse that the trial

court's order denying his Rule 35(c) motion was based on an unreasonable

determination of the facts because the trial court believed the issue arose during voir

dire, when counsel still could have exercised a peremptory challenge to remove the

juror in question.  However, the Colorado Court of Appeals correctly noted that the issue

arose "after the jury had been empaneled." *Arellano II*, slip op. at 1 (ECF No. 14-11 at

3).  Therefore, while the trial court may have been mistaken regarding the timing of the incident, it is clear that the Colorado Court of Appeals was not operating under the same mistaken belief when that court rejected claim 4(f) on the grounds that Mr. Arellano "presented no evidence showing that appellate counsel's performance was an incompetent decision."  *Arellano II*, slip op. at 8 (ECF No. 14-11 at 10).

Mr. Arellano's conclusory assertions in claims 4(e) and 4(f) that counsel was ineffective are not sufficient to warrant habeas relief.  *See Humphreys*, 261 F.3d at 1022 n.2.  As the Colorado Court of Appeals correctly noted, the only evidence presented at the hearing on Mr. Arellano's Rule 35(c) motion was his own testimony.  *See Arellano II*, slip op. at 3 (ECF No. 14-11 at 5); (*see also* State Court R., Tr. 2/25/10).  Thus, the Court cannot conclude that the decision of the Colorado Court of Appeals that Mr. Arellano failed to support his ineffective assistance of counsel claims with evidence "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).

Furthermore, the absence of any evidence to support the ineffective assistance of counsel claims also leads to the conclusion that the decision of the Colorado Court of Appeals was not an unreasonable application of *Strickland.  See* 28 U.S.C. § 2254(d)(1).  Given that my review of Mr. Arellano's attorneys "must be highly deferential," the absence of evidence to support the ineffective assistance of counsel claims fails to overcome the "strong presumption" that their performance falls within the range of "reasonable professional assistance."  *Strickland*, 466 U.S. at 689.  While Mr. Arellano believes "it is self-evident that counsel was unaware of Mr. Arellano's right

to seek replacement of the juror" (ECF No. 24 at 10), the absence of any evidence to support that conclusory assertion is fatal to claim 4(e).  In short, there is no indication that the failure to seek replacement of the juror with the alternate was completely unreasonable.  Similarly, there also is no indication that the failure to raise the mistrial issue on direct appeal was completely unreasonable.  Therefore, Mr. Arellano is not entitled to relief with respect to claims 4(e) and 4(f).

## IV.  CONCLUSION

In summary, the Court finds that Mr. Arellano is not entitled to relief on his remaining claims.  Accordingly, it is

ORDERED that the Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (ECF No. 1) is **DENIED** and this case is **DISMISSED WITH PREJUDICE**.

IT IS FURTHER ORDERED that there is no basis on which to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c).

Dated:  May 28, 2013.

BY THE COURT:

s/ Wiley Y. Daniel
WILEY Y. DANIEL,
SENIOR UNITED STATES DISTRICT JUDGE